# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TROY OGLESBY, SR., on behalf of himself and all other similarly situated, | Civil Action |
| *Plaintiff*, | No. 1:15-cv-08006-RMB-JS |
| v. | |
| THE "ORIGINAL" W. HARGROVE DEMOLITION COMPANY, INC. d/b/a CAMDEN TOWING, INC., and THE CITY OF CAMDEN | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES AND FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Lisa J. Rodriguez
SCHNADER HARRISON SEGAL & LEWIS LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Phone: (856) 482-5222
Fax: (856) 482-6980
*Attorneys for Plaintiffs*

Date:  September 27, 2017

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    HISTORY OF THE LITIGATION ............................................................ 2

III.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
       PURPOSES ............................................................................................... 4

       A.     Notice ............................................................................................ 8

              1.     Implementation of the Notice Plan ........................................10

              2.     Response to Notice ............................................................10

IV.    TERMS OF THE SETTLEMENT ...........................................................10

       A.     The Settlement ............................................................................10

V.     THE COURT SHOULD APPROVE THE SETTLEMENT .......................12

       A.     The Standard of Review as Fair, Reasonable and Adequate .............12

       B.     The Settlement Meets the *Girsh* Factors ...........................................13

              1.     The complexity, expense and likely duration of the litigation .14

              2.     Reaction of the Class ............................................................16

              3.     Stage of the Proceedings and Amount of Discovery...............17

              4.     The risks of establishing liability and damages ......................18

              5.     Ability of Plaintiffs to Maintain Class Certification ...............19

              6.     Ability of Defendant to Withstand a Greater Judgment..........19

              7.     The Range of Reasonableness of the Settlement Fund in Light
                     of the Best Possible Recovery and the Attendant Risks of
                     Litigation ............................................................................20

VI.    CONCLUSION ....................................................................................21

i

# TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Amchem Prods., Inc., v. Windsor,*
521 U.S. 591 (1997)............................................................................4

*Carlough v. Amchem Prods., Inc.,*
158 F.R.D. 314 (E.D. Pa. 1993) ......................................................9

*Chiang v. Veneman,*
385 F.3d 256 (3d Cir. 2004)...........................................................5

*Colon v. Passaic City,*
No. 08-cv-4439, 2012 WL 1457764 (D.N.J. Apr. 24 2012)
(Cavanaugh, J.) ...............................................................................18

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. 2010)..........................................................12

*Girsh v. Jepson,*
321 F.2d 153 (3d Cir. 1975)..........................................................13

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975)...................................................*passim*

*Grunin v. Int'l House of Pancakes,*
513 F.2d 114 (8th Cir. 1975)...........................................................8

*In re Apple Computer Sec. Litig.,*
No. C-84-20148(A), 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...................16

*In re AremisSoft Corp. Sec. Litig.,*
210 F.R.D. 109 (D. N.J. 2002) .......................................................9

*In re AT&T Corp. Sec. Litig.,*
455 F. 3d 160 (3d Cir. 2006).........................................................14

*In re Auto. Refinishing Paint Antitrust Litig.,*
617 F. Supp. 2d 336 (E.D. Pa. 2007)...........................................16

PHDATA 6181312_1

*In re Bulk (Extruded) Graphite Products Antitrust Litig.*,
   No. Civ. 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619
   (D.N.J. April 4, 2006) ........................................................................8

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................... 13, 14, 16

*In re CertainTeed Roofing Shingle Prods. Liab. Litig.*,
   296 F.R.D. 468 (E.D. Pa. 2010) ........................................................8

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ..............................................................4

*In re Enron Corp. Secs., Derivs., & "ERISA" Litig.*,
   No. MDL-1446, 2008 U.S. Dist. LEXIS 84656
   (S.D. Tex. Sept. 8, 2008) ...................................................................9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab.
   Litig.*, 55 F.3d 768 (3d Cir. 1995) ....................................... 15, 17, 19

*In re Prudential Ins. Co. Am. Sales*,
   148 F.3d 283 (3d Cir. 1998) ............................................................17

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
   No. 08-cv-1435, 2012 WL 1964451 (D.N.J. May 31, 2012 ) ..........14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .................................................. 12, 13, 20

*Johnson & Johnson*,
   900 F. Supp. 2d 467, 484-85 (2012) ................................................20

*Jones v. Commerce Bancorp. Inc.*,
   C.A. No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144
   (D. N.J. July 16, 2007) .....................................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................9

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................9

PHDATA 6181312_1

*Plymouth Cnty. Contributory Ret. Sys. v. Hassan*,
    No. 08-cv-1022, 2012 WL 664827 (D.N.J. Feb 28, 2012)...............................14

*Robbins v. Koger Props. Inc.*,
    116 F.3d 1215 (10th Cir. 1996).......................................................................16

*Smith v. Prof'l Billing & Mgmt. Servs.*,
    No. 06-4453, 2007 U.S. Dist. LEXIS 86189
    (D.N.J. Nov. 21, 2007)....................................................................................5

*United Nat'l Ret. Fun v. Watts*,
    No. o4-cv-3603, 2005 WL 2877899 (D.N.J. Oct. 28, 2003)
    (Cavanaugh, J.)...............................................................................................20

## <u>Statutes</u>

42 U.S.C. § 1983.........................................................................................5, 6

Consumer Fraud Act............................................................................5, 6, 18, 20

Predatory Towing Prevention Act...................................................................5, 6

## <u>Rules</u>

Rule 23 ..............................................................................................................19

Rule 23(a) ........................................................................................................4, 8

Rule 23(b) ........................................................................................................7, 8

Rule 23(b)(3) ........................................................................................................8

Rule 23(c)(2) ........................................................................................................9

Rule 23(c)(2)(B) ..........................................................................................8, 9, 11

Rule 23(c)(2) ........................................................................................................8

Rule 23(e) ......................................................................................................8, 12

PHDATA 6181312_1

## I.    PRELIMINARY STATEMENT

This Court should grant final approval to the $281,000.00 settlement of this class action brought by persons subjected to overcharges for non-consensual tows. The action was brought against The "Original" W. Hargrove Demolition Company, Inc. ("Hargrove") and the City of Camden ("Camden").

This Settlement provides for the full reimbursement of the overcharged tow amount, plus 10% interest, to those persons whose vehicles were towed by Hargrove in violation of its contract with Camden. It also provides for the implementation of a revised compliance program by Camden to address the situation where a Camden contractor acts in disregard of its contractual terms.

The Settlement was reached after both sides had a full understanding of the strength and weaknesses of their respective cases. The Settlement was negotiated at arms-length with Magistrate Judge Schneider's assistance. Class Counsel believes that the settlement amount of $281,000.00, which includes attorneys' fees and a class representative incentive award, along with the new compliance measures adopted by Camden, is a good result for the Class. It is fair, reasonable and adequate to all Class Members and should be approved.

PHDATA 6181312_1

## II.     HISTORY OF THE LITIGATION

Plaintiff, Troy Oglesby's car was first subjected to a non-consensual tow by Hargrove on May 14, 2015. Oglesby's towed car was unregistered and in working order at the time it was towed. In order to retrieve this car, he was required to pay $160.00 in towing charges, not the $89.00 provided for in Hargrove's contract with Camden, plus $24.00 in storage fees. Mr. Oglesby paid the amount charged without objection.

His car was towed a second time on July 9, 2015. Again, the car was unregistered and in working order. Mr. Oglesby went to Hargrove's State Street location and tendered payment of $89.00, the amount Hargrove agreed to accept in its contract with Camden, for a non-consensual tow for a car not involved in an accident. Hargrove refused the proffered $89.00, insisting that it was entitled to the $160.00 flatbed rate.

Plaintiff Oglesby consulted counsel who attempted early resolution of the dispute with Hargrove. These early attempts to resolve the overbilling issue with both Hargrove and Camden were unavailing, leading to the filing of this litigation.

Hargrove produced initial discovery comprised of invoices for persons who had been charged $160.00 for a non-accident, non-consensual tow. It became apparent, however, that the Hargrove production did not capture all those who had been inappropriately charged for a non-consensual tow.

2

Plaintiff served discovery requests on both Hargrove and Camden. Camden produced over 48,000 pages of documents. Class Counsel also subpoenaed the tow records of the Camden County Police Department ("CCPD"). The CCPD produced over 3.000 pages of documents. These documents were essential to determine the universe of the Class who had been overcharged in violation of the Camden contract provisions.

Following the initial discovery, while the case was stayed so that the parties could engage in settlement negotiations, Hargrove wrote to a subsection of the class offering to pay them for towing overcharges. Hargrove's list did not include all those impacted, nor did it advise the recipients of the pending litigation. The actions by Hargrove prompted Class Counsel to file an emergent motion to limit Hargrove's communications with putative class members. [Dkt. 35-1]. That motion was orally argued, and on June 2, 2016, Judge Schneider entered an Order barring Hargrove from sending further notice or communications to the putative class regarding the settlement of their claims and barring them from entering into any additional settlements with the putative class. [Dkt. 38].

The parties then engaged in a series of settlement conferences with Magistrate Judge Schneider which ultimately led to a resolution of this litigation.

PHDATA 6181312_1

## III.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

When determining whether a settlement class is appropriate, the Court must first determine where the proposed class satisfies Rules 23(a) and (b) before considering the settlement's reasonableness and fairness. *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 299 (3d Cir. 2005). The Court addressed this issue preliminarily when determining whether it was appropriate to send notice to the proposed class. The analysis is the same at this stage of the litigation.

The question is "whether a proposed class has sufficient unity so that absent members can be fairly bound by decisions of class representatives." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 621 (1997). Rule 23(a) provides that a class may be certified if:  (1) the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims and defenses of the class; and (4) the representative party fairly and adequately protects the interests of the class. Each of these requirements is met for the Settlement Class, which consists of:

> All persons who had a vehicle towed by Hargrove, pursuant to its contract with Camden between October 15, 2013 and November 4, 2015, whose tow was not required because of an accident, and who were charged for a flatbed tow in excess of $89.00.

Exhibit A, V(A).

4

First, the Settlement Class consists of approximately 842 eligible members. Each identified class member was charged for a flatbed tow, though their vehicle was not involved in an accident and was in working order when towed. Though there is no minimum number necessary to satisfy the numerosity requirement, "[c]ourts in the Third Circuit generally hold that classes of close to one hundred members are sufficient. *Smith v. Prof'l Billing & Mgmt. Servs.*, No. 06-4453, 2007 U.S. Dist. LEXIS 86189, at *10 (D.N.J. Nov. 21, 2007). Consequently, it is fairly indisputable that the proposed class meets the numerosity requirement.

Second, "the commonality requirement will be satisfied if the named plaintiff[] share[s] at least one question of law or fact with the grievances of the prospective class." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004). Here, Oglesby shares common questions of law and fact with the proposed Settlement Class. Oglesby and the proposed Settlement Class were assessed a $160.00 flatbed tow charge when their vehicles were involuntarily towed by Hargrove without having been involved in an accident, in violation of its contract with Camden. Accordingly, both Oglesby and the proposed Settlement Class raise the common questions of law of whether Hargrove breached its contract with Camden by charging an amount in excess of the Contract amount, and whether this breach violated 42 U.S.C. § 1983 and New Jersey laws, including the Predatory Towing Prevention Act ("PTPA") and Consumer Fraud Act ("CFA"). It also raises the

PHDATA 6181312_1

question of whether Camden's lack of oversight in failing to assure that Hargrove complied with the terms of its agreement with Camden, was a violation of 42 U.S.C. § 1983. Accordingly, the commonality requirement has been satisfied.

Third, they typicality requirement is "designed to align the interests of the class" and is met where "there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  For the same reasons outlined above, this requirement has been met as well. Hargrove charged Oglesby $160.00 for a non-accident flatbed tow in excess of the contracted amount with Camden and in violation of the PTPA and CFA, and Camden failed to assure that the Hargrove complied with the provisions of its contract with Camden.  Each Settlement Class member would have identical claims under 42 U.S.C. § 1983 and for breach of contract and violations of the PTPA and CFA based on this conduct. As such, the interests of the Settlement Class members and the class representative are aligned.

Finally, both Oglesby, as the Class Representative, and Class Counsel adequately represent the interests of the class. Oglesby's injuries are the same as each Class member in that they were assessed a $160.00 charge for a non-accident flatbed tow, when, per Hargrove's contract with Camden, only $89.00 should have been charged. Similarly, Oglesby and each Class member were injured by Camden's failure to insure Hargrove properly charged the contracted amount under

PHDATA 6181312_1

its agreement and that it satisfied its reporting obligations to City. That failure allowed Hargrove to continue to charge flat-bed tow rates for non-accident tows, in violation of its contract with Camden.

Each class member will receive the same reimbursement amount of $78.10, per tow with the possibility of an additional prorated amount if each eligible class member does not claim his or her portion within the designated time period. Additionally, Oglesby worked with Class Counsel to develop a compliance program to be implemented by Camden to prevent situations such as this from occurring again. His interests in no way conflict with those of the Settlement Class and he has been a staunch advocate of the needs of the Class.

Class Counsel, Lisa Rodriguez is an experienced class action litigator who has zealously represented the needs of the absent class members. She has significant experience in the specific area of challenging improper business practices. Without her advocacy, including review of thousands of documents during discovery and willingness to litigate this case, the over 842 class members would not be receiving this relief.

The Settlement Class also satisfies the "predominance" and "superiority" requirements of Rule 23(b). Predominance exists where, as here, there is "generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class

member's individual position." *In re Bulk (Extruded) Graphite Products Antitrust Litig.*, No. Civ. 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619, at *9 (D.N.J. April 4, 2006) (internal citation omitted). Moreover, a class action is the superior method of adjudicating the class members' claims as the individual claims are modest and there is a potential that the approximately 842 aggrieved individuals will not otherwise pursue their claims. *Id*. at *13.

Therefore, as the requirements of Rules 23(a) and (b) are met with the Settlement Class, and as nothing has changed since preliminary approval, the Court should certify the Settlement Class for settlement purposes.

## A.   NOTICE

Where parties seek certification of a settlement class pursuant to Rule 23(b)(3) and approval of the settlement pursuant to Rule 23(e), "notice of the class must meet the requirements of both Rule 23(c)(2) and Rule 23(e)." *In re CertainTeed Roofing Shingle Prods. Liab. Litig.*, 296 F.R.D. 468, 480 (E.D. Pa. 2010). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

The notice plan approved by the Court under Rule 23(c)(2)(B) has been carried out. The parties have made multiple channels through which class members can learn about the settlement. The notice plan provides for both individual and

print notice as well as a website. *See generally*, Declaration of Claims Administrator, Exhibit B, at ¶¶ 6-11.

The requirements of due process are straightforward in the settlement context: "In order to satisfy due process, notice to class members must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D. N.J. 2002) (quotation marks omitted); *see also*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). For those whose names and addresses cannot be determined by reasonable efforts, notice by publication suffices under both Rule 23(c)(2) and the due process clause. *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993) (*citing Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950)). Significantly, compliance with Rule 23(c)(2) itself can satisfy the Due Process Clause. *See In re Enron Corp. Secs., Derivs., & "ERISA" Litig.*, No. MDL-1446, 2008 U.S. Dist. LEXIS 84656, at *41 (S.D. Tex. Sept. 8, 2008). The Court-approved Notice Program, designed and implemented for this case, provided the best practicable notice of the Settlement, consistent with the requirements of Rule 23(c)(2)(B) to members of the classes.

### 1.     Implementation of the Notice Plan

Pursuant to the Settlement Agreement, Hargrove is responsible for the costs of settlement administration, including notice costs. This amount is not included in the total settlement amount. By Order dated June 6, 2017, the Court preliminarily approved the Settlement and directed that Notice be mailed to all class members by first class mail on August 7, 2017. On that date, Notice was mailed to 989 Class Members. *See* Declaration of Claims Administrator, Exhibit B. Publication Notice was published in the August 6, 2017 weekly issue of the *Annointed New Journal*, a Camden based newspaper which Camden uses to provide legal notices.

### 2.     Response to Notice

As of September 20, 2017, 205 Notices were returned by the United States Postal Service as undeliverable. Notices that were returned as undeliverable with a forwarding address were remailed to the updated address. Address verification searches were conducted for Notices that were returned as undeliverable without a forwarding address. As of the date of the filing of this Memorandum, there have been 95 claims filed, but the deadline for claims is October 6, 2017. There have been no requests for exclusion and no opt-outs.

## IV.   TERMS OF THE SETTLEMENT

### A.     THE SETTLEMENT

Under the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement"), attached as Exhibit "A", Hargrove will pay a total of

PHDATA 6181312_1

$281,000.00 plus the costs of administration and Camden will implement and enforce compliance procedures, including standard inspection and reporting contracts for all of its towing contracts. The Settlement Class includes:

> All persons who had a vehicle towed by Hargrove, pursuant to its contract with Camden between October 15, 2013 and November 4, 2015, whose tow was not required because of an accident, and who were charged for a flatbed tow in excess of $89.00.

Exhibit A, V(A).

The "Settlement Amount" of $281,000.00 is comprised of: (1) a "Claims Amount" for the Settlement Class of $66,000.00, which will reimburse class members who were charged for a flatbed tow when their vehicle was not in an accident, *Id.* V(B)(1),(2); (2) $15,000.00 incentive award for Oglesby, the Class Representative, *Id.* V(C); and (3) $200,000.00 for attorneys' fees and reimbursement of expenses, *Id.* V(D). Pursuant to the terms of the Settlement, Hargrove has provided an initial $75,000.00 settlement payment, which is being held by Class Counsel in an escrow account. The remaining settlement amount is due upon final approval of the Settlement.

In addition to the cash component of the settlement, Camden agrees to implement and enforce compliance procedures, including inspection and reporting requirements. This component of the settlement is an important one for Camden's

11

failure to ensure Hargrove's compliance with the terms of its contract, including monthly reporting requirements, allowed the overcharges to occur.

Under the "Plan of Distribution" provided for in the Settlement Agreement, the reimbursement amount for each contract shall be the difference between the $160.00 that Hargrove charged for a non-accident flatbed tow and $89.00, plus 10%. The class members were identified by using Hargrove's records. To the extent that any portion of the Claims Amount remains after settlement payments are made to those class members filing valid claims, the remaining portion will be allocated, on a *pro rata* basis to those class members that filed valid claims.

## V.   THE COURT SHOULD APPROVE THE SETTLEMENT

### A.   THE STANDARD OF REVIEW AS FAIR, REASONABLE AND ADEQUATE

Federal Rule of Civil Procedure 23(e) provides that before a class action may be dismissed or compromised, the compromise must be granted judicial approval and notice of the proposed dismissal or compromise must be provided to the class.  The decision to approve a proposed settlement is within the discretion of the Court, *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975), although as the Third Circuit more recently recognized, "[t]he strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). This circumscribed role is attributable to the

overriding public interest in settling class action litigation. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Before a class action may be resolved, a fairness hearing must be held. *Jones v. Commerce Bancorp. Inc.*, C.A. No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144, at *2 (D. N.J. July 16, 2007). But a proposed class action settlement "will enjoy a presumption of fairness" where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Warfarin*, 391 F.3d at 535 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 N. 18 (3d Cir. 2001)).

## B.   THE SETTLEMENT MEETS THE *GIRSH* FACTORS

In *Girsh v. Jepson*, 321 F.2d 153, 157 (3d Cir. 1975), the Third Circuit identified nine factors to determine whether a proposed settlement is "fair, reasonable and adequate." The factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-cv-1435, 2012 WL 1964451 at *2 (D.N.J. May 31, 2012 ) (*citing Girsh*, 521 F.2d at 157). *See also In re AT&T Corp. Sec. Litig.*, 455 F. 3d 160, 164-65 (3d Cir. 2006).

As this Court has held, applying *Girsh* is not a mechanical exercise:

> These factors are a guide and the absence of one or more does not automatically render the settlement unfair . . . . Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh* . . . . In sum, the Court's assessment of whether the settlement is fair, adequate and reasonable is guided by the *Girsh* factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in [the] Settlement.

*Plymouth Cnty. Contributory Ret. Sys. v. Hassan*, No. 08-cv-1022, 2012 WL 664827, at *2 (D.N.J. Feb 28, 2012) (emphasis added) (Cavanaugh); *Schering-Plough ERISA*, 2012 WL 1964451 at *2 (same).

### 1.      The complexity, expense and likely duration of the litigation

This first *Girsh* factor "captures the probable costs, in both time and money of continued litigation." *In re Cendant Corp. Litig.* 264 F.3d 201, 237 (3d Cir. 2001).

Class Counsel recognize that this case was not particularly complex. Hargrove entered into a contract with Camden that provided that it agreed to charge $89.00 for a non-consensual tow for a car that was not in an accident.

Hargrove frequently charged $160.00 for a flatbed tow for a car that was not in an accident. Camden allowed this overcharge to continue unabated, in part because it failed to require Hargrove to comply with the contract reporting requirements which would have alerted Camden to the issue of overbilling. Had Camden done so, it would have been apparent that Hargrove was charging flatbed rates for non-consensual tows for cars not involved in an accident.

Hargrove argued that it had discretion to charge the higher amount if it deemed that a flatbed was necessary. Class Counsel believe that, given the express terms of the contract, that argument would be rejected by the finder of fact. Notwithstanding the relative straightforward nature of the claims, preparing for and trying this case would be time-consuming and expensive.

"By measuring the costs of continuing on the adversarial path, Court can gauge the benefit of settling the claim amicably." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). Even if the Plaintiffs would prevail at trial, the risks confronting them would continue through post-trial motions and probable appeal. *See Merck ERISA*, 2010 WL 547613, at *8 ("Even if Plaintiffs successfully established causation at trial, post-trial motions and appeals present added risk"). As has been aptly noted, "although plaintiffs may prevail at trial, even a victory at trial is not a guarantee of ultimate success" because "the defendants would appeal such judgment" and "[a]n appeal could

15

seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself" *Id.* at *11 (internal quotations and citations omitted). *Robbins v. Koger Props. Inc.*, 116 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict in securities fraud action following two decades of litigation); *In re Apple Computer Sec. Litig.,* No. C-84-20148(A), 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

Settlement at this juncture results in a substantial present recovery without the risks and delays of trial and post-trial proceedings. The complexity, expense, and likely duration of continued litigation absent the Settlement all weigh heavily in favor of approval.

### 2.    Reaction of the Class

The second *Girsh* factor evaluates whether members of the class generally support or object to the settlement. Notice has been mailed to 987 Class Members. It has also been published in the *Annointed News*. As of September 22, 2017, 95 class members had already submitted claims. There have been no objections filed and no requests to opt-out. This is a strong indication that the Class overwhelmingly supports the settlement. *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weights in favor of Settlement."); *In re*

*Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336 (E.D. Pa. 2007) ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements."). The deadline for objections has not yet passed. Plaintiffs will update the Court on any objections before the hearing on October 17, 2017.

### 3.   Stage of the Proceedings and Amount of Discovery

The third *Girsh* factor requires the Court to "consider the degree of case development that Class Counsel have accomplished prior to Settlement, including the type and amount of discovery already undertaken." *Merck ERISA*, 2010 WL 547613 at *7 (D. N.J. Feb. 9, 2010) (quoting *GM Truck*, 55 F.3d 768, 813 (3d Cir. 1995)). "In short, under this factor, the Court considers whether the amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Merck ERISA*, 2010 WL 547613, at *7 (alteration in original) (quoting *In re Prudential Ins. Co. Am. Sales*, 148 F.3d 283, 319 (3d Cir. 1998)).

Here, the settlement was reached after the completion of written discovery, which included thousands of documents. Class Counsel believes that the action has reached a stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *McCay Health Net, Inc.*, 569 F. Supp. 2d 448, 461 (D. N.J. 2008). Plaintiffs and their counsel "have an adequate appreciation of the facts

in this matter, and this factor weighs in favor of approval." *Colon v. Passaic City*, No. 08-cv-4439, 2012 WL 1457764, at *4 (D.N.J. Apr. 24 2012) (Cavanaugh, J.) ("considering the amount of effort expended by Class Counsel in this matter, as well Class Counsel's extensive experience litigating class actions … the Court is convinced that Plaintiffs have a sufficient understanding of the merits of this case").

Accordingly, the third *Girsh* factor also supports approval of the proposed Settlement.

### 4.    The risks of establishing liability and damages

Class Counsel does not believe that there would be a substantial risk in determining liability and damages, for again it believes the claims and the resulting damages are relatively straightforward. Defendant Hargrove has agreed to compensate class members for the total amount of the  tow overcharge, plus interest. And the attorneys' fees, reimbursement of expenses, and incentive awards are paid in addition to the claims amount, and do not in any way impact the amount of damages to which the Class is entitled.

Here, the Class Members received 100% of the overcharge, plus 10% which represents an interest component. If successful at trial, the Class Members would have been entitled to treble damages on their Consumer Fraud Act Claim. No matter how confident Class Counsel is about the claims asserted, there is always

risk at trial. In addition to an unfavorable verdict, the possibility exists that Hargrove might not be financially viable after the trial and any subsequent appeal.[1]

Thus, settlement at this point provides certainty, as well as an immediate monetary benefit for the Class Members. These *Girsh* factors weigh heavily in support of settlement

### 5.    Ability of Plaintiffs to Maintain Class Certification

Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action, *GM Trucks*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. Here, given the nature of Lead Plaintiff's claims and their satisfaction of the requirements of Rule 23, Plaintiff does not consider the ability to maintain a class action to pose a significant risk.

### 6.    Ability of Defendant to Withstand a Greater Judgment

In addressing the seventh *Girsh* factor, the Court must consider whether Defendants could withstand a judgment much greater than the amount of the settlement. The settlement provides for a complete refund of the overcharge, plus

---

[1]      It should be noted that Hargrove retained bankruptcy counsel during the final stages of settlement negotiations with Judge Schneider who attended the conferences and indicated that Hargrove was contemplating bankruptcy.

PHDATA 6181312_1

10%. It also provides for attorney's fees, separate and apart from the refund amount. A successful trial of this matter would entitle the class to treble the overcharge amount, under the CFA, plus attorneys' fees and expenses. As noted above, Hargrove threatened bankruptcy during settlement negotiations so the possibility of non-payment was real. It was counsel's assessment that the possibility of treble damages did not justify the risk of Hargrove's bankruptcy.

> **7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Schering-Plough/Merck Merger*, 2010 WL 1257722, at *12 (quoting *Warfarin*, 391 F.3d 516, 538 (3d Cir. 2004). A Court asked to approve a settlement should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor), and a range in light of all the attendant risks of litigation (the ninth factor).  Additionally, in conducting its evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution...." *Johnson & Johnson*, 900 F. Supp. 2d 467, 484-85 (2012) (internal quotations and citations omitted). It has been recognized that "[t]he best possible recovery, while arguably more than the settlement, is tempered by the risks of further litigation." *United Nat'l Ret. Fun v.*

*Watts*, No. o4-cv-3603, 2005 WL 2877899, at *4 (D.N.J. Oct. 28, 2003) (Cavanaugh, J.). Here the Class is receiving a full refund of the amount of the towing overcharge, plus 10%, that represents an interest component. There are also receiving equitable relief from Camden in its compliance procedures. Thus, the Class will be made whole. The possibility of treble damages does justify facing the uncertainties of continued litigation, including the possibility of a Hargrove bankruptcy.

## VI.    CONCLUSION

In sum, the *Girsh* factors support approval of the proposed Settlement. The Settlement proposed was negotiated at arms-length and is fair, reasonable, and adequate. For the foregoing reasons, the Plaintiff respectfully requests the Court grant final approval of the Settlement.

_____*s/ Lisa J. Rodriguez*_____

Lisa J. Rodriguez
SCHNADER HARRISON SEGAL & LEWIS LLP
A Pennsylvania Limited Liability Partnership
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1165
Phone: 856-482-5741 ▪ Fax: 856-482-2578
ljrodriguez@schnader.com

*Attorneys for Plaintiff*

Dated:  September 27, 2017

PHDATA 6181312_1

22